Good morning, Your Honors. David Zuckman on behalf of Manuel Renteria. Your Honors, it was about two years ago that I stood before this court and said that the jury instructions were wrong in the case. And the court agreed with me and said that the instructions given by Judge Burns did not include the word substantial. And as a consequence, they were wrong and the conviction was reversed. When we got back to the district court, I told the district court that that means that the indictment is also deficient because if it's an element of the offense, if it has to be in the jury instructions, then it's got to be in the indictment. That is an unimpeachable principle that stretches 20 years in this court's case law to United States v. Keith. It, of course, is famous in United States v. DuBose. It's clear in United States v. Omer. If it's an element of the offense, it's got to be in the indictment. I read that indictment 50, 60 times. It's still not in there. What do you do with U.S. v. Negra? Well, I think I distinguished Negra pretty well because Negra was a guilty plea where the defendants pled. Then after they pled, the government disclosed some material, some impeachment material that the defendants then said, oh, this, we should be allowed to withdraw our pleas. But, of course, this, it's clear that unless it was full-on Brady, they're not going to get the ability to withdraw their pleas. And really what they were complaining of was a Rule 16 violation. And the Rule 16 violation was terminated upon their guilty plea because a guilty plea terminates any antecedent constitutional challenge. So they had pled guilty. They'd appealed, got their case reversed on a sentencing issue, went back to the district court, said we've got this new material. We now want to withdraw our pleas. And the court, you know, it does have expansive language. But if you look at what the case actually did, it's just an ordinary application that once you pled guilty, you waive any antecedent constitutional violation. So. Well, your client was aware of the language in his indictment in his first trial, was he not? It's very difficult to say what Mr. Regeria is aware of. Well, it's not the first time he's appeared before this court issue, and I know. This is true. Why shouldn't we find that he's aware of the duplicity and sufficiency challenge to the indictment by failing to raise it in a prior appeal? Well, these are, first, they're jurisdictional challenges, right? I mean, we're talking about a jurisdictional question. Second, this, I'm unaware of any rule, at least there's nothing in the Federal Rules that says that once you've gone up to the court of appeals once, you then just get reset for trial. There's no more motions. You just get another trial. And that's not, in fact, what happened. In the district court, we got set for a Rule 12 motion hearing. We filed motions. The district court heard those motions. The district court, of course, cited this court's decision, but it didn't say this is law of the case. It just went through the analysis again. At no point did the government say, you know, this is waiver. They just, they said that, you know, the indictment is sufficient. Since it was remanded for a retrial, it's like the first trial didn't happen. It's a new proceeding where you can file motions again. And given the general litigiousness of defendants, especially defendants who get reversals, were that the rule, I think we'd have a case out there that says once you go to trial, you're done with the Rule 12 portion of your case. You don't get to file any new motions. You just get set for a retrial. And in every case I have ever handled that had the misfortune of being convicted and the great fortune of getting reversed, we always filed new motions. Rule 12 is clear on that. So I don't know of why you would find that these things were waived, especially since they go to jurisdiction, which can be raised at any time. I mean, if I'm correct about what I'm saying, that substantial had to be in the indictment. And if I'm correct in saying that a house of worship is not used in interstate commerce on an abstract level as we determine those things, the indictment is still deficient today. It just does not state a federal offense. And you shouldn't overlook that. I mean, what Mr. Renteria did was horrible. He's a mentally disturbed young man. He's got a lot of problems, and he's going to have a lot of problems in the future. However, there was no reason to make a federal case of it. He was getting prosecuted by the state of California. The federal government stuck their nose in for whatever reason. But this is not something of national concern. And I don't usually like speculating about what the framers would think about anything. I think it's a bit unseemly to speak for the people who are long dead. But in this case, I don't think there's any doubt. It's sort of unseemly, too, to talk about the federal government sticking its nose here and nose there, you know.  Okay. I'm not sure which appendage I should be describing. It's okay. Go ahead. I think that this is violative of the Constitution in several respects, the first being that you're exercising jurisdiction over a common law offense of arson that was committed by a San Diego resident against a San Diego-based temple. It was done for whatever mentally disturbed reason he did it. State authorities were prosecuting it. The federal government is asserting jurisdiction over Temple Beth-Am saying, well, you have an effect in interstate commerce. That grants Congress the ability to regulate that entity. You don't get to pick and choose. Once you say that Beth-Am is used in interstate commerce, they are subjected to the full panoply of Congress's regulatory ability. It doesn't take much to have something, you know, be involved in interstate commerce. It does take something, though. It doesn't take very little, you know, very little. Well, in Papa DuPalis, the homeowner case, you know, I have a child. Occasionally they have lemonade sales at our home. That doesn't make my house a place of commerce, at least I hope it doesn't. There's neighborhood garage sales. They don't transmit private residences into commercial places. I mean, in a private capital system,  I mean, are those lemons shipped in across state lines? We have a tree. Huh? We have a lemon tree. A lemon tree? Yes. So it's homegrown. We don't even have any. When the bees come over, you know. Where do you get the fertilizer? This is true. Where do you get the fertilizer? Taking jobs from American bees. Well, yours are organic. I like the sugar that goes in the lemonade. That's true. That's true. When he makes it correctly. Right. The problem is if you were going to imagine a thing that was not related to commerce, though, wouldn't, like, the paradigm of that be spirituality? Wouldn't that be the one thing that you'd say, okay, well, this is clearly an area that does not involve commerce and should not involve commerce. In this case, the only link they've got, the best they've got, is this gift shop, this small, tiny gift shop that maybe did $1,200 to $1,500 a month. It sold religious wares. It's selling things in a temple. They didn't describe precisely what they sell. This isn't a gift shop that you run into in an airport. They sell things that are related to the religious mission. We know all this. It's all in here. I hate to repeat it. Your argument is that the indictment should have used the word substantial. And that a house of worship is a house of worship and not a place of commerce. It's substantial. Now, what about the unanimity instruction? We did ask for that, and it was denied because District Judge Burns found that the different bases of commerce jurisdiction were just one way to prove up the jurisdictional element. And I think in the Davenport case, the government argued, and this court agreed, that when you're proving different modes of commerce clause jurisdiction, you are proving different offenses for the Blockburger test. So this court has already said that when you're dealing with a commerce-based statute, a penal statute that is, you know, justified by the Congress's commerce plausibility, those different channels. Do we tell jurors that they have to, well, the bottom line is what we tell them, is that they can't convict unless they believe, beyond a reasonable doubt, that the defendant is guilty of the crime that's charged. We don't take each one and go through each one. They have to each agree on, I mean, they can disagree about the classical example, of course, is robbery. You can disagree about whether the person was threatened with a knife or with a gun. You can have different means of committing the element. However, these are different elements. It's like in the illegal entry cases. You have attempted entry, you have entry, and you have being found in. They're all different species of the same actus reus, but they're all different. In the Commerce Clause, these bases are separate. And that is clear from the Supreme Court's case law. It's clear from this Court's case law. Kennedy, you've got it all in between. I don't understand. You've just been pounding me on the head with the same thought for five minutes. Well, I don't have anything novel to add, so. Okay. Well, you've made your point quite adequately. Thank you. That's all I can offer. Thanks, Your Honors. All right. Mr. Zugman. Good morning. Kyle Hoffman for the United States. Mr. Zugman points out that this case has come up to this Court again, and that's true. He maintains that he argued that substantially needed to be in the jury instructions, and that's kind of true. He actually made a very detailed argument about what the particular jury instruction should be, and this Court agreed with him that that instruction should be given. And it did include the word and defined a little more carefully what substantially interstate commerce would be. But he also raised the issue of substantially being not in the indictment. That was in the first trial. Correct. The first appeal. First appeal. And it was rejected. You would argue that the law of the case then should apply. Correct. That's the first point. That's the first thing. What's the second point? Second point, it's not an element. No case is held as an element. It's, as this Court, the previous panel said, it's a judicial gloss. And the cases that Mr. Zugman relies on, they're all cases in which Nader, Omer, basically the common law definitions of certain crimes aren't covered by the statute. And courts have said, no, you know, we all understand what you're saying. With fraud, there has to be materiality. With passing a bad check, you have to know it's a bad check. But that's just not the case here. Substantially affecting interstate commerce, it really is. I thought you were going on to the independent, not duplicitous charges. Well, something has been kind of mixed up around with Mr. Zugman's argument, I think, which is that there's the issue of the indictment and whether it failed to allege necessary elements. And that's what I was discussing. And then there's another issue about whether the indictment was duplicitous. Right. I'm not sure which. Well, I think you answered the first one. Okay. So now we were going to get to whether it was duplicitous or whether it's charged one single crime. And if it did, then the unanimity instruction was not required, and that would be your argument, I think. It would. But I would point out to the Court a couple of things. If you step back and you think, Mr. Zugman's argument appears to be it's two different crimes because there are two different ways to prove interstate commerce. But that doesn't make any sense. It's all about burning buildings that are used in interstate commerce, whether you prove up the interstate commerce connection one way or another. I can't get my brain around the idea that these are two separate offenses. That's point one. Point two, even if it was duplicitous, the rule is that if an instruction particularizes the offense, then it's no matter. And here the defendant got the very instruction he insisted on from the first time around, and that this Court put its stamp of approval on in the first appeal. And that instruction particularized the way you had to prove interstate commerce with respect to a church. So it's not duplicitous, and even if it were, it doesn't matter, given the jury instructions. The evidence was sufficient? Yes. And there's a similar kind of argument to be made there, which is law of the case should apply times two or squared in that particular instance. And the reason is Mr. Zugman, the first time around, the panel issued two opinions the first time around, and the first time around it deferred on the sufficiency question. Mr. Zugman said, no, you can't do that. You have to decide the sufficiency question. And it went ahead and did so. Yes, there was sufficient evidence. And so I would submit that there's even more reason for respecting the previous panel's decision on that matter. Second point. You got them in the trial, and there is a little difference in the evidence in the second trial. Marginal. Marginal difference. And the rule is, and this comes from a case that Judge Craterson authored in 1998. I'm sure he remembers it. Cutty. Who? Which one? Cutty. Where does it come from? There was a case in which Your Honor wrote the opinion, Cutty, C-U-D-D-Y, in which the rule was stated, if the evidence is, the evidence has to be substantially different. Oh, I thought you said it came from my law firm. No, no. I don't go back that much research, Your Honor. It's all right. You know, on that, you cite to Gillespie, that's a Tenth Circuit case. Correct. Why didn't you cite to Lamont? Well, I think we did cite to Lamont, and I think Lamont is, I would rely. It's a Ninth Circuit case. Right. I would rely on Lamont. Yeah. I mean, Lamont, again, I differ with Mr. Zugman. It doesn't say the church is on no account, or houses of worship, on no account. So it left the question open, did it? Correct. And it's kind of the limiting case was the megachurch. That was clearly commerce. Well, this is not a megachurch. I mean, it's clear that it isn't. But there is some commerce going on there. And I should say this. I wouldn't have said this except for the fact that Mr. Zugman basically accused the federal government of sticking its nose in places. I went up and stopped. They do that, too. Right. Well, I went up and stopped at the synagogue yesterday on my way up to this argument. And they remember this incident very, very vividly. And they built fences around this temple, partly because there's a preschool center there, but also partly in response to this incident. And so the notion that the federal government does not belong there, I think we should all agree, I would submit we should all agree, is just misguided. If the Court has further questions, I'm happy to try to answer them. Okay. I'll move to the third one. I just got a little read of the points, Your Honor. This substantiality needing to be in the indictment, the Omer case dismissed an indictment because it failed to allege the word materiality in a bank fraud prosecution. I am looking at the bank fraud statute, 18 U.S.C. 1344. The word materiality does not appear in that statute. It's not in there. Now, if there's some strong distinction to be drawn between the term materiality and the term substantially, it's lost on me what that could be. It is an implied required element. It is a thing that needs to be proved, and it's not in the indictment. That's that point. I drive by that temple all the time, too, and I think it's horrible what happened. But I think that the State of California was more than able, in fact, was prosecuting Mr. Renteria, and I think that the temple is better off in the long term if it's not subjected to federal regulation. That is a Pandora's box. That I submit. Thank you. All right. I'll get to the next matter here, and that's U.S.
judges: Pregerson, Nelson, Thompson